IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


NAOMI MESSICK                                                             PLAINTIFF


        v.                              CIVIL NO. 14-5144


CAROLYN W. COLVIN, Commissioner
Social Security Administration                                DEFENDANT


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

        Plaintiff, Naomi Messick, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claims for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI

of the Social Security Act (Act).  In this judicial review, the Court must determine whether there

is substantial evidence in the administrative record to support the Commissioner's decision.  See

42 U.S.C. § 405(g).

## I.      Procedural Background

        Plaintiff protectively filed her current applications for DIB and SSI on February 3, 2012,

and October 16, 2012, respectively, alleging an inability to work since January 16, 2012, due to

colo-rectal cancer, back problems, sciatic nerve problems, high blood pressure, and high

cholestrol.  (Tr. 113, 141).  For DIB purposes, Plaintiff maintained insured status through March

31, 2012.  (Tr. 9, 138).  An administrative video hearing was held on February 27, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 19-51).

By written decision dated June 14, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 11).  Specifically, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and a colostomy status post colorectal cancer in 2008.[1]  However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 11-12).  The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).  With the help of a vocational expert, the ALJ determined Plaintiff could perform her past relevant work as an apartment manager, residence supervisor.[2]  (Tr. 14).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on March 7, 2014.  (Tr. 1-3).  Subsequently, Plaintiff filed this action.  (Doc. 1).  Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation.  (Doc. 10; Doc. 11).

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

---

[1]The Court notes, Plaintiff's colorectal cancer was treated from 2001-2003.

[2]The ALJ noted the Dictionary of Occupational Titles number for this job is 186.167-018.

-2-

## II.      Evidence Presented

At the administrative hearing held before the ALJ on February 27, 2013, Plaintiff testified that she was sixty-one years of aged, and that she had obtained an Associates Degree in church music. (Tr. 26-27).  Plaintiff testified that three weeks prior to the hearing, she and her husband took a job as co-managers at a storage facility, and that they lived on-site.  (Tr. 24).  Plaintiff testified that she would receive rent payments, rent out units to customers, and do some of the computer work.  (Tr. 25).  The record reflects that Plaintiff's past relevant work consists of work as a home attendant, and an apartment manager, residence supervisor.  (Tr. 31, 36, 50).

The medical evidence dated prior to the relevant time period, reveals that Plaintiff underwent chemotherapy and radiotherapy in late 2001 into 2002 to treat her adenocarcinoma of the rectum. (Tr. 204-213). Plaintiff later underwent two surgical procedures in 2003, which included a sigmoid colostomy. (Tr.  254-282, 284-300).  Plaintiff underwent a colonoscopy on October 25, 2011, which revealed diverticulosis of the descending colon; a normal mucosa in the cecum, ascending colon, transverse colon, and descending colon; and a normal appearing ostomy.  (Tr. 218-219).

The pertinent medical evidence for the relevant time period reflects the following.  On May 15, 2012, Plaintiff underwent a consultative general physical examination performed by Dr. Kenneth M. Poemoceah.  (Tr. 232-237).  Plaintiff reported that she had last work in January of 2012, as a retirement community manager.  Plaintiff reported that she stopped this work when mold was discovered in her house which required her to move, and then her job was terminated. Dr. Poemoceah noted Plaintiff had been treated for colorectal cancer in 2003, and that there had

AO72A
(Rev. 8/82)

not been a reoccurrence of cancer.  Plaintiff also complained of chronic back problems, and sciatic problems.  Plaintiff reported that she had been to a chiropractor who told her that she had a bulging disc.  Dr. Poemoceah noted Plaintiff only took over-the-counter pain medication, and that she reported that she "gets along."  Plaintiff reported that she also has hypertension and high cholesterol, both of which are controlled by medication.  Upon examination, Dr. Poemoceah found that Plaintiff had a normal range of motion in the spine and extremities; that Plaintiff had mild muscle spasm; that Plaintiff's reflexes were symmetrically diminished; that Plaintiff had no muscle weakness or atrophy; and that Plaintiff had a normal gait and station. With regard to limb functioning, Plaintiff was able to hold a pen and write; touch fingertips to palms; oppose thumb to fingers; pick up a coin; stand/walk without assistive devices; walk on heel and toes; squat/arise from a squatting position; and grip one hundred percent.  Dr. Poemoceah noted that a x-ray of Plaintiff's spine showed marked degenerative changes, spurring throughout the lumbar spine, and more pronounced spurring basically fusion of the lower thoracic vertebra.   Dr. Poemoceah diagnosed Plaintiff with status post cancer with ostomy, moderate DJD of the lumbar spine, a history of hypertension, and a history of hyperlipidemia.  Dr. Poemoceah made the following statement:

> Patient is currently able to drive. Able to climb a flight of stairs. Able to walk at least 100 feet.  Able to sit for at least 30 minutes.  Able to stand for at least 30 minutes.  No limitation of movement with arms.

(Tr. 236)

On May 18, 2012, Dr. Charles Friedman, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently

-4-

lift or carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; and that postural, manipulative, visual, communicative or environmental limitations were not evident. (Tr. 240-247). After reviewing all the evidence, Dr. Sharon Keith affirmed Dr. Friedman's findings on June 27, 2012. (Tr. 251).

### III.    Applicable Law

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v.

Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A),

1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results

from anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3),

1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for

at least twelve consecutive months.

      The Commissioner's regulations require her to apply a five-step sequential evaluation

process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or

mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal

an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national

economy given her age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only

if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work

experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138,

1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**IV.    Discussion**

      Plaintiff argues the following issues on appeal: 1) the ALJ failed to fully and fairly

develop the record; 2) the ALJ erred in determining Plaintiff's credibility; 3) the ALJ erred in

determining Plaintiff's RFC; and 4) the ALJ erred in determining Plaintiff could return to her

past relevant work.

AO72A
(Rev. 8/82)

### A.   Insured Status

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on March 31, 2012. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of January 16, 2012, her alleged onset date of disability, through March 31, 2012, the last date she was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB she must prove that, on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir.2006) (holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements).

### B.   Full and Fair Development of the Record

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir.1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir.2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop

a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." <u>Shannon v. Chater</u>, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." <u>McCoy v. Astrue</u>, 648 F.3d 605, 612 (8th Cir. 2011).

In this case, the record consists of a May of 2012 consultative general physical examination completed by Dr. Poemoceah; the assessments of two non-examining medical consultants, Drs. Friedman and Keith; and medical records dated prior to the relevant time period.

Plaintiff argues that the ALJ should have contacted her treating physicians to obtain a RFC of Plaintiff's abilities prior the expiration of her insured status in March of 2012. A RFC assessment from a treating physician, although helpful, is not required. See <u>Page v. Astrue</u>, 484 F.3d 1040, 1043 (8th Cir.2007)(the medical evidence, State agency physician opinions, and claimant's own testimony were sufficient to assess residual functional capacity); <u>Stormo v. Barnhart</u>, 377 F.3d 801, 807–08 (8th Cir.2004)(medical evidence, State agency physicians' assessments, and claimant's reported activities of daily living supported residual functional capacity assessment). After reviewing the entire record the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

-8-

### C.      Credibility Analysis

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors.  A review of the record reveals that Plaintiff completed a Function Report on March 7, 2012, wherein Plaintiff reported that she normally does light housekeeping, runs errands, walks shorts distances for exercise, watches television, reads the Bible, and sits with her granddaughter who has special needs.  (Tr. 160-167).  In this report, Plaintiff indicated that she could take care of her personal needs, noting that sometimes her ostomy bag leaked and she would need to change it; prepare simple meals; walk and drive on her own; handle finances; go to church; and have lunch with friends.  In discussing Plaintiff's daily activities, the ALJ noted that along with the activities referenced in her Function Report, Plaintiff testified at the administrative hearing that she and her husband

AO72A
(Rev. 8/82)

manage a storage unit facility, where she mainly answers the phone, distributes informational materials, and takes payments.

With respect to Plaintiff's colo-rectal cancer, the ALJ noted that the record reveals Plaintiff sought very little treatment after her final surgery in 2003. In fact, the medical evidence indicates Plaintiff sought no treatment for problems associated with her colostomy during the relevant time period. See Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure seek treatment inconsistent with allegations of pain). Plaintiff did undergo a colonoscopy in 2011, which revealed diverticulosis of the descending colon with a normal ostomy. Plaintiff sought no further treatment.

With respect to Plaintiff's alleged chronic back pain, the record reveals Plaintiff did not seek treatment during the relevant time period, and that she reported to Dr. Poemoceah that she only took over-the-counter medication for this pain. Clevenger v. Soc. Sec. Admin., 567 F.3d 971, 976 (8th Cir.2009) (ALJ may consider that a claimant primarily used only over-the-counter pain-relief remedies to relieve symptoms). Dr. Poemoceah noted that a x-ray of Plaintiff's spine showed marked degenerative changes, spurring throughout the lumbar spine, and more pronounced spurring basically fusion of the lower thoracic vertebra. A review of Dr. Poemoceah examination reveals that Plaintiff exhibited a normal range of motion in her spine and extremities; mild muscle spasm; reflexes that were symmetrically diminished; no muscle weakness or atrophy; and a normal gait and station. With regard to limb functioning, Plaintiff was able to hold a pen and write; touch fingertips to palms; oppose thumb to fingers; pick up a coin; stand/walk without assistive devices; walk on heel and toes; squat/arise from a squatting

-10-

position; and grip one hundred percent of normal.  Thus, while Plaintiff may indeed experience some degree of pain due to her back impairment, the Court finds substantial evidence of record supporting the ALJ's finding that Plaintiff does not have a disabling back impairment.  See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain).

As for Plaintiff's alleged hypertension and hyperlipidemia, the ALJ noted that the medical evidence shows this impairment was controlled with medication. Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009), quoting  Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").

Therefore, although it is clear that Plaintiff suffers with some degree of pain, she has not established that she is unable to engage in any gainful activity.  See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability).   Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**D.**    **The ALJ's RFC Determination**

With respect to the ALJ's RFC determination, RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801

AO72A
(Rev. 8/82)

(8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations

resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §

404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a

"claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700,

704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be

supported by medical evidence that addresses the claimant's ability to function in the workplace.

Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth

specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

"The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion

*and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL

1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D.

Minn. Dec. 2, 2013).

In the present case, the ALJ considered the medical assessments of examining and non-

examining agency medical consultants, Plaintiff's subjective complaints, and her medical records

when he determined Plaintiff could perform light work. The Court finds, after reviewing the

record as a whole, that there was sufficient evidence for the ALJ to make an informed decision.

Plaintiff's capacity to perform light work is also supported by the fact that the medical evidence

does not indicate that Plaintiff's examining physicians placed restrictions on her activities that

would preclude performing the RFC determined. See Hutton v. Apfel, 175 F.3d 651, 655 (8th

Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability).

-12-

Accordingly, the Court finds there is substantial evidence of record to support the ALJ's RFC findings.

###   E.   Past Relevant Work:

Plaintiff has the initial burden of proving that she suffers from a medically determinable impairment which precludes the performance of past work.  Kirby v. Sullivan, 923 F.2d 1323, 1326 (8th Cir. 1991).  Only after the claimant establishes that a disability precludes performance of past relevant work will the burden shift to the Commissioner to prove that the claimant can perform other work.  Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993).

According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if she retains the RFC to perform:

> 1.  The actual functional demands and job duties of a particular past relevant job; *or*

> 2.  The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61 (1982); Martin v. Sullivan, 901 F.2d 650, 653 (8th Cir. 1990)(expressly approving the two part test from S.S.R. 82-61).

The Court notes in this case the ALJ relied upon the testimony of a vocational expert, who after reviewing the file and listening to Plaintiff's testimony regarding her past work, testified that Plaintiff's past relevant work as an apartment manager, residence supervisor is considered light work.  See Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis,

-13-

when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work") (citations omitted).  Accordingly, the Court finds substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work as an apartment manager, residence supervisor.

**IV.    Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 23rd day of July, 2015.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-14-